GEORGE DEMERS *vs.* FRANK C. DEERING.

York.    Opinion November 28, 1899.

*Negligence.   Risk Assumed.   Fellow-Servant.*

</div>

In an action to recover damages for personal injuries, it appeared that the plaintiff was an employee of the defendant in his saw mill, and was injured by being thrown upon a trimming-saw which he was operating. The plaintiff was standing in such a position that he was struck by one end of a plank lying upon rolls, the other end of which had been accidently caught by a piece of timber on the moving carriage of the circular or main saw. The movement of the carriage forced the plank against the plaintiff, who was standing in its path, and he was thereby pushed over onto the trimming-saw. The defendant gave no instructions to the plaintiff where to stand, and the plaintiff had worked at the saw in question only two hours before the accident.

The plaintiff contended that the defendant was in fault in not providing him with a suitable and safe place in which to do his work, that the appliances by which the trimming-saw was raised and lowered were improperly adjusted

or negligently permitted to be out of order, so that the saw did not drop down as quickly as it should have done, and that the defendant should have warned the plaintiff of the danger.

*Held;* that the plaintiff was not standing in the place intended for workmen to stand in, while doing that work, and that the position of the various parts of the machinery and appliances was such as to plainly indicate to any person of ordinary intelligence where it was expected that a workman should stand; that if that place was dangerous, as claimed by the plaintiff, he might have refused to work there, but that he could not select another place, not intended by the employer, and if he did, he assumed the risks.

*Also, held;* that the place selected by the plaintiff was one of obvious danger, and that even if he had been directed by the defendant to stand in that place, and he had assented, he must be held to have assumed the risks, for they were not only naturally incident to the business, but were sufficiently obvious, without special instruction.

*Also, held;* that the injury was contributed to by the negligence of a fellow-servant whose duty it was to see that the plank was so placed upon the rolls that it could not be caught by the moving carriage; or by the negligence of another fellow-servant, the surveyor, whose duty it was not to run the carriage unless it was clear of the planks on the rolls; or by the negligence of both.

ON MOTION BY DEFENDANT.

This was an action on the case to recover damages for the loss of the plaintiff's leg, etc., while employed in the defendant's saw mill, in Biddeford, on the twenty-seventh day of September, 1897. The jury returned a verdict for the plaintiff, assessing the damages at $1450.

The writ contained two counts; one, in a general way, alleging that the plaintiff was injured through the bad arrangement of the defendant's machinery, whereby there was no suitable place in which the plaintiff could stand and do his work; and in the second count, specifying more definitely and in detail the nature and arrangement of the machinery and the particular parts of it that caused the injury,—alleging that the trimming-saw was not properly weighted, that it was so overweighted that it was too much counter-balanced, and it did not drop back quickly enough; also that the rotary saw and trimming-saw were placed too near each other.

The case is stated in the opinion.

*F. W. Hovey,* for plaintiff.

Counsel cited, among others, the following cases:

VOL. XCIII.   18

An employer is liable for an injury to an employee resulting in part from its failure to furnish reasonably safe machinery for his use, although the negligence of a fellow-servant contributed to the injury.   *Hogue* v. *Sligo Furnace Co.*, 62 Mo. App. 491 ; *Shields* v. *Robbins*, 73 N. Y. 708.

The negligence of a fellow-servant who concurred with the negligence of the master in causing an injury to a servant, does not prevent him from recovering from the master.   *Chicago & N. W. R. Co.* v. *Gillson*, 173 Ill. 264, (64 Am. St. Rep. 117.)

A person whose duty it was to keep the machinery in repair, is not a fellow-servant of the injured employee.   *Shanny* v. *Androscoggin Mills*, 66 Maine, 426.

An unsuitableness of ways, works or machinery for the work intended to be done and actually done by means thereof, is a defect within the meaning of the Mass. Stat. 1887, c. 270, § 1, cl. 1, although they are perfect of their kind and in good repair and suitable for other kind of work.   *Geloneck* v. *Dean Steam Pump Co.*, 165 Mass. 202.

An employer is liable for an injury to an employee caused by a defective condition of the appliances furnished, if he knew or by the exercise of due care might have known of the defect.   *Whitney & S. Co.* v. *O'Rourke*, 172 Ill. 177.

A servant does not assume the unusual and extraordinary risk of which the master knew or which he should have known or foreseen.   *Reed* v. *Stoskmeyer*, 74 Fed. Rep. 186.

An employee may rely upon the duty of the master to furnish safe appliances, and is not bound to investigate and test the fitness and safety of an appliance in the absence of notice that it is defective or unsafe.   *Chicago & A. R. Co.* v. *Mavoney*, 67 Ill. App. 618.

A master is responsible for the maintenance of a dangerous condition of the place to which the servant is assigned to work where his attention was called to it and a proper inspection would have resulted in its discovery.

An employer is bound to furnish a safe place in which the servant, being himself in the exercise of due care, can perform his duty safely.   *Cayzer* v. *Taylor*, 10 Gray, 274.

Whether it was possible for the plaintiff to have met with the accident from inadvertence, or want of acquaintance with the danger of his position, without being chargeable with a want of reasonable care, is a question to be submitted to the jury. *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 584. A servant knowing the facts, may be utterly ignorant of the risks. The employee must perceive or appreciate the danger in order to preclude the recovery. *Ib.*

Whether a circular saw should have a guard is a question for the jury. *Holmes* v. *Winchester*, 135 Mass. 298.

Where the master employs a servant in the use of machinery which he knows, but the servant does not know, to be attended with peculiar danger, he must be held responsible for an injury which occurs in consequence of his failure to see to it that a proper notice is given. *Holmes* v. *Winchester*, supra.

*H. Fairfield and L. R. Moore*, for defendant.

SITTING: PETERS, C. J., HASKELL, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

SAVAGE, J. The plaintiff had been an employee in the defendant's steam saw-mill, for about two and one-half months prior to the time he received the injuries complained of. He had nearly all that time been at work in the same room where the accident occurred, but at a saw other than the one which he was operating when he was hurt, and which did the injury. On the morning of the accident, he was directed by the foreman of the defendant to work at the trimming-saw. His duties there were to receive the slabs and sawed lumber as they came to him over iron rolls from the main rotary saw, and with the trimming-saw cut the slabs into lengths, and butt or trim the lumber. The pieces of slabs were then thrown out of a door at the side of the mill, and the lumber passed on over the trimming-saw box and over other rolls out at the end of the mill. The saw carriage, set of rolls from the rotary to the trimming-saw box, and the trimming-saw box itself are all spoken of in the case with reference to a "right side" and a "left

side," meaning the relative position of the various objects as they would appear to one looking from the rotary saw in the direction the saw carriage would be moving while lumber is being sawed, which would also be towards the trimming-saw box. The situation was such that the outermost timber of the saw carriage on the right hand side, when run down to the box, would touch, but not go by, the nearer left hand corner of the trimming-saw box. The set of iron rolls was on the right hand side of the rotary saw and saw carriage and extended at intervals to the trimming-saw box. The rolls were placed so near to the saw carriage that planks and other lumber after being sawed would naturally drop off onto them from the carriage. There was another servant of the defendant (Loroux, at the time in question,) whose duty it was to "clear" the rotary saw, that is, to see that the lumber fell or was taken from the carriage onto the rolls, and it was then his duty to push it along the rolls towards the trimming-saw box, to be taken there by the plaintiff. The trimming-saw box was about five feet square. Its top was about eighteen inches from the floor, and on a level with the top of the rolls. The upper edge of the trimming-saw when not in use was below the top of the box. But when it was to be used, the operator, by pulling down on a rope which was attached to a combination of levers, rods and pulleys, lifted the saw partly above the level of the box. The rope stretched from lever to lever was about six and one-half feet from the floor, and was placed over the left hand side of the box. The door out of which slabs were thrown was about seven feet to the left of the box. The distance between the iron roll at the box and the next one towards the rotary was about three feet.

The man in charge of the trimming-saw operated it in this way. With his left hand he pulled down the rope and thus lifted the saw and held it up while in use. At the same time, with his right hand, he held or steadied the lumber on the rolls while it was being butted or trimmed. When the saw carriage was run down as far as it could be by the gear and pinion in use, the end of the right hand side timber of the carriage nearest the trimming-saw was about six feet distant from the box. The plaintiff claims that

at times the carriage by its momentum was carried so far, after leaving the pinion, that the end of the timber of the carriage struck the box, and it is admitted that sometimes when very long timber was being sawed, the carriage, after leaving the pinion, was pushed by hand, or by the use of bars, until the end touched the box, in order to allow the saw to cut through to the end of the timber.

So much of a description of the machinery and the method of operating it has been necessary to an understanding of the manner in which the plaintiff was injured, and as well, of the duties which the defendant owed to the plaintiff.

The plaintiff says that the only instruction he received was " to work at the trimming-saw," that he received no instructions as to the manner of operating it, nor where he should stand when at work. Nor was he instructed or cautioned in regard to dangers. He had worked about two hours at the time of the accident. A log had been squared by the rotary saw, and the four planks dropping onto the rolls, one after another, had been pushed down to him by Loroux, the servant whose duty it was to take the lumber from the saw carriage, and push it down to him. The plaintiff sawed the slabs and was making the last cut in the fourth slab. He was standing between the two rolls nearest the trimming-saw and somewhat towards the right side of the box, with his left hand pulling down the rope and sustaining the saw, and with his right hand on the slab. Meanwhile, a plank had been sawed by the rotary, had been taken off onto the rolls by Loroux, and pushed down towards the plaintiff. A second plank was being sawed. In the process of sawing, the end of this latter plank sprung off towards the rolls and caught onto the end of the plank lying on the rolls. Such is the testimony of Loroux, who was a witness for the plaintiff. The effect was that the movement of the saw carriage pushed the plank on the rolls against the legs of the plaintiff and crowded him over onto the box and saw. The saw was still in motion, and cut his leg nearly off.

The claims of the parties are these. The plaintiff alleges and now contends that the defendant was in fault in not providing him

with a suitable and safe place in which to do his work, and also in that the mechanical appliances by which the saw was lifted and allowed to drop down, and the counter balance on the saw frame, were so improperly adjusted or so negligently permitted to be out of order, that the saw did not drop back as quickly as it ought to have done, when the operator let go of the rope. The plaintiff claims that he instantly let go of the rope as soon as he was struck by the plank, and that if the saw had dropped as it should have done, he would not have been hurt by it.

The defendant contends that the plaintiff was working in an improper and dangerous place—a place selected by himself without any good reason; that the proper place for the plaintiff to have stood was outside of the rolls on the left hand side of the box; that though the plaintiff received no special directions where to stand, the position of the box and appliances was such as to make it obvious to any man of ordinary intelligence that he should stand at the left hand side of the box; that the door out of which it was the operator's duty to throw the slabs he cut, or at least the last piece of each slab, was at the left hand side; that the standards and levers and rope were all on the left hand side; that the rope would be directly over the head of a workman standing in that position, while if he stood on the right hand side of the box outside of the rolls, he could reach the rope only with difficulty, and that he could not hold the rope, from the right side, and at the same time hold the lumber he was sawing without much difficulty, unless he stood between the rolls; and that to stand between the rolls was obviously dangerous, as it was the point towards which all lumber from the rotary was pushed and was in the path along which it all had to pass; and that a man there was at any time liable to be struck by lumber pushed by hand, or, as in this case, by the carriage.

The plaintiff does not seriously deny that by the manner in which the trimming-saw box and its appliances were constructed, it would appear that it was intended that the operator should stand at the left hand side of the box. His reply to the defendant is that the left hand side of the box was not a suitable or safe place

for him to work, because of a constant liability to be struck by the timber of the saw carriage when it was propelled down against the box; that timber at such times was exactly in the place where the defendant claims he ought to have stood at his work; that the carriage came down thus far frequently in the ordinary operation of the mill, and did come down several times during the two hours he was at work; that he was not instructed where to stand; and and that, as the left side of the box was a dangerous place, he worked on the other side, it being the only practicable place remaining.

The parties are not much at variance in regard to the facts which we deem to be vital, nor is there any serious contention about the rules of law which govern their rights. The parties do differ in applying those rules to the facts.

It was, indeed, the duty of the defendant to provide the plaintiff with a reasonably safe place in which to do his work; but whatever the place appointed by the defendant, the plaintiff is to be held to have assumed the risk of obvious perils, and of those ordinarily incident to the business, if he consented to work there. *Mundle* v. *Hill Mfg. Co.*, 86 Maine, 400. We think it is clear, for reasons already suggested, which are supported by proof, that the place selected by the defendant for the plaintiff to work was at the left side of the box. The plaintiff, however, did not work in the place appointed by the defendant. He says there was an obvious danger in that position, and for that reason he chose another place to work in. It is unnecessary to inquire whether the movements of the saw carriage made the place dangerous to stand in, or whether it only made it at times more difficult or inconvenient to work there, as the testimony of some of the plaintiff's own witnesses seems to indicate,—for the plaintiff did not work in that place and was not hurt there. If the place was dangerous, he might have refused to work at the trimming-saw. *Buzzell* v. *Laconia Mfg. Co.*, 48 Maine, 113. But he did not. He selected another place, not the place appointed by the defendant; and when he did that, we think he assumed the risks attendant upon working in that place.

The relative rights and duties of master and servant arise from the contract of employment. If plaintiff worked in a place not appointed by defendant, and so not within the purview of the contract, the defendant did not owe him any duty with respect to that place. In such case, the plaintiff took whatever risks there were. And if the occupation there was apparently hazardous, the plaintiff would also be guilty of contributory negligence, and cannot recover if his own negligence contributed to the injury.

And these remarks apply also to the complaint of the plaintiff that the trimming-saw dropped back to its place too slowly. The plaintiff was not standing in the place appointed for him.

But the plaintiff contends that the place where he stood was the usual place that men had stood in before that time, doing the same work, that the defendant knew it was the usual, customary place, and that by setting the plaintiff to work without instructions, the latter had a right to assume that he was expected to work where those before him had worked, that such in effect was the contract of employment. See *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572. The defendant denies this. But assume it to be so. The plaintiff even then assumed not only the risks naturally incident to the business, but also the obvious risks of working in that place, *Coolbroth* v. *Maine Central R. R. Co.*, 77 Maine, 165; *Wormell* v. *Maine Central R. R. Co.*, 79 Maine, 397; and it seems to us obvious that a man standing between the rolls along which all the product of the rotary saw must be pushed, as this machinery was situated, was likely to be struck by it. It was therefore a risk which he assumed. *Conley* v. *American Express Co.*, 87 Maine, 352.

The plaintiff was a man of mature years. It is true, that he received no instructions relative to the dangers attending his work. But those dangers, even upon the plaintiff's own showing, were not latent or concealed. They were obvious and apparent. If the defendant had told him that by standing between the rolls where he did stand he was liable to be hit by planks pushed along the rolls, it would be no more than he himself knew or ought to have known. The servant assumes all the risks which he knows, or

which by the exercise of ordinary care he ought to know. *Nason* v. *West*, 78 Maine, 253; *Campbell* v. *Eveleth*, 83 Maine, 50; *Wheeler* v. *Wason Mfg. Co.*, 135 Mass. 294.

But, as we have already said, we think the evidence discloses that the plaintiff was not standing in the proper place, that he was negligent in standing where he did, and that his negligence contributed to the injury.

It may also be said that the plaintiff cannot recover, because the negligence of a fellow-servant caused or contributed to the injury. It is well settled, of course, that the negligence of a fellow-servant is one of the risks assumed by the servant. *Blake* v. *Maine Central R. R. Co.*, 70 Maine, 60.

Nason, the sawyer, testified that it was his duty not to start or run the carriage unless the lumber on the rolls was clear from the path of the carriage, and that such was his duty is self evident. It was the duty of the man at the rolls, Loroux, to take away the lumber from the carriage, and leave it on the rolls, clear of the carriage, and in such a manner that neither the carriage nor the stick upon it could come in contact with it. If the sawyer run the carriage while its path was not clear, or if Loroux failed to clear the plank from the carriage, and keep it clear, (and one or both of these things did happen), such conduct was negligent, and by means of that negligence the plaintiff was crowded over onto the trimming-saw. Nason and Loroux were fellow-servants of the plaintiff, and for injuries received through the negligence of either of them, the plaintiff cannot recover. Even the rule laid down by some courts, and to support which the plaintiff's counsel has cited authorities, that when the master has been negligent, the servant may not be debarred from recovery, even if the negligence of a fellow-servant contributed to the injury, would not avail the plaintiff in this case. That rule is nowhere applied in cases where the plaintiff himself was in fault. It is unnecessary to discuss that rule further.

We are of the opinion, therefore, that the verdict for the plaintiff was clearly wrong. We are led to the conclusion that the jury must have been influenced by bias or sympathy, or acted

under a misapprehension of the facts, or of the legal rules which should have controlled a decision based upon those facts.

*Verdict set aside.*

*Motion for a new trial sustained.*